```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

**JENNY L. GRANT,**

      **Plaintiff,**

vs.                                          Civil Action 2:07-CV-344
                                                                    Judge Graham
                                                                      Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

      **Defendant.**

## REPORT AND RECOMMENDATION

      This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383(c) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors* and the Commissioner's *Memorandum in Opposition.*

      Plaintiff Jenny L. Grant filed several prior applications for supplemental security income.  Plaintiff protectively filed her current application for benefits in April 2002, alleging that she is disabled by epilepsy manifested by multiple, uncontrollable seizures, chronic back pain, anxiety and "nerves." *A.R.* 355. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      On June 16, 2004, plaintiff, who appeared without counsel, testified at the administrative hearing, as did Theresa Dugan, plaintiff's case worker, and Julie Morrissey, who testified as a vocational expert. In a decision dated December 15, 2004, the administrative law judge found that plaintiff suffers the severe impairments of seizure disorder, by history, and depression, recurrent

and mild.  However, neither of these impairments, whether considered singly or in combination, meet or equal the level of severity of any impairment listed in Appendix I to Subpart P of Regulations No. 4. The administrative law judge went on to find that plaintiff has the residual functional capacity to

> lift 25 to 30 pounds and carry 10 to 15 pounds; stand/walk four to six hours in an eight hour workday; never climb ladders, work at heights or around machinery; never drive; and perform no greater than short, simple directions.

*A.R.* 24.  Relying on the testimony of the vocational expert, the administrative law judge found that there exist a significant number of jobs in the national economy that plaintiff could perform. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 1, 2007.

Plaintiff appeared at the hearing without counsel. *A.R.* 507. The administrative law judge advised plaintiff of her right to representation and offered to continue the hearing to allow plaintiff further opportunity to obtain representation. *A.R.* 507.  Plaintiff indicated that she wished to proceed without counsel. *A.R.* 507-08. The administrative law judge thereupon explained the hearing procedures. *A.R.* 509-10.

Plaintiff was 44 years old at the time of the administrative hearing.  She has a 10th grade education and no significant work history. *A.R.* 117, 511.

Plaintiff testified that she suffers seizures that cause her to lose consciousness.  *A.R.* 512-513.  When she awakens, she has a severe

headache and is exhausted to the point that she must sleep. *A.R.* 513. The seizures sometimes cause her to lose control over her bladder. She can no longer drive because of the condition. *A.R.* 518.

In addition, plaintiff undergoes treatment for depression.

Plaintiff testified that she can walk only approximately two blocks on level ground before she must stop and rest. *A.R.* 515-516. She can comfortably sit or stand for only 15 to 20 minutes. *Id.* She also has problems pushing, pulling and reaching and she cannot lift a gallon of milk. *A.R.* 516. She occasionally cooks, washes dishes, does laundry and cleans. She speaks daily by telephone with a friend and her sister, goes shopping with her boyfriend and her sister and watches television. *A.R.* 519-21.

Theresa Dugan, plaintiff's case worker from Six County, Inc., a mental health agency, testified on plaintiff's behalf. *A.R.* 522-24. Ms. Dugan had worked with plaintiff for approximately 2 ½ to 3 months, assisting her with medical appointments, in obtaining and monitoring medication and in improving plaintiff's socialization skills. *Id.* According to Ms. Dugan, plaintiff's depression causes her to isolate herself. *Id.*

The administrative law judge asked the vocational expert to assume a claimant with plaintiff's vocational profile who can lift up to 25 to 30 pounds, carry 10 to 15 pounds, sit, stand, and walk for 4 to 6 hours each in an 8-hour workday, but who cannot climb ladders, work at unprotected heights, work around dangerous moving machinery, or operate a motor vehicle. *A.R.* 525. Moreover, the claimant would have moderate (*i.e.,* still able to function satisfactorily), limitations in her ability to understand and remember short, simple instructions, to understand,

3

remember and carry out detailed instructions and to make judgments on simple, work-related decisions.  In response, the vocational expert testified that such a claimant could perform unskilled light and sedentary work in the regional economy, including 5,000 jobs as light assembler, 3,000 jobs as sedentary assembler, 4,000 jobs as light hand packer, and 400 to 500 jobs as a grader, sorter and selector.  *A.R.* 526.

The medical record includes records associated with plaintiff's prior applications.  On December 24, 1998, plaintiff was involved in car accident, following which she was diagnosed with lumbar and cervical strain. *A.R.* 123-28.

In November 1999, Margaret G. Smith, Ph.D., a psychologist, evaluated plaintiff at the request of the state agency.  *A.R.* 132-39. Plaintiff complained of chronic back pain.  Her daily activities included caring for her 15 year old son, cooking and light housework.  *Id.*  IQ testing placed plaintiff within the borderline level of intellectual functioning.  *Id.*  However, Dr. Smith noted that plaintiff's verbal skills suggested a somewhat higher level of functioning.  *Id.*  She assigned a global assessment functioning ("GAF") of 50.  Dr. Smith specifically commented that plaintiff's day-to-day functioning appears to be at least adequate. *A.R.* 139.

Myron H. Powelson, Jr., M.D., has been plaintiff's treating physician for a number of years.  In October 2000, Dr. Powelson stated that plaintiff "is unable to work an eight hour day due to illness." *A.R.* 206.  In February 2001, Dr. Powelson indicated that, in an 8-hour work day, plaintiff can sit, stand and walk for no more than 6 hours, and can only occasionally lift and carry up to 10 pounds.  *A.R.* 205.

On April 26, 2001, plaintiff was seen in the emergency room

4

for what was diagnosed as an acute pseudo seizure. *A.R.* 208-209. There was some suggestion that the seizure was medically induced. *Id.* Plaintiff was advised to follow up with her neurologist. *Id.*

A July 2001 EEG was normal, but did not absolutely rule out epilepsy.[1]

The medical records associated only with plaintiff's current application consists of 25 pages. *A.R.* 399-424. An agency psychologist commented that there was insufficient evidence to establish a severe mental impairment as of plaintiff's alleged date of onset. *A.R.* 399. In March 2002, plaintiff presented to the emergency room after a fall caused by her anti-seizure medication. *A.R.* 402-03. Office notes from Dr. Powelson were also included. *A.R.* 405-08. In September 2001, Dr. Powelson completed a physical capacity evaluation in which he indicated that plaintiff can stand for only 1 hour, can walk for less than 1 hour and can sit for less than 1 hour throughout an 8-hour workday. She can lift up to 10 pounds occasionally, but can never crawl or climb ladders. *A.R.* 218-19. Finally, Dr. Powelson opined that plaintiff's condition would likely deteriorate if she were subjected to the stress of work. *A.R.* 219.

Also included in the current medical records are seven (7) pages of psychiatric treatment and counseling notes from Six County, *A.R.* 409-15, covering the two month period of May through July 2002. Plaintiff complained of family-related stress, *A.R.* 414-15, an inability to sleep for days on end, *A.R.* 409-413; 435; 438-440; 443; 446; 449-450, panic attacks and being afraid of being in public, *A.R.* 433, anxiety,

---

[1] It was noted that up to 10% of epileptics have a normal EEG. *A.R.* 213.

*A.R.* 409; 411; 435; 439; 442; 450, depression, *A.R.* 411; 413; 435; 438, and crying spells, *A.R.* 409.  Darell J. Smith, M.D., one of plaintiff's treating psychiatrists, reported complaints of interpersonal problems and depression with poor sleep.  *A.R.* 413.  On July 2002, plaintiff's medication was increased.

In March 2004, Meg Metts, Ph.D., performed a consultative psychological evaluation of plaintiff on behalf of the state agency. *A.R.* 416-424.  Plaintiff complained of anxiety, depression, problems sleeping, crying spells due to her inability to perform everyday tasks, and feeling nervous, hearing noises, being suspicious of others, loss of sex drive, obsessive compulsive behavior and homicidal thoughts. Her IQ testing placed plaintiff in the mild mental retardation range, although Dr. Metts noted that plaintiff actually functions above that level. Personality testing suggested an invalid profile.  Dr. Metts diagnosed major depressive disorder, recurrent, mild, and borderline intellectual functioning.  She assigned a GAF of 51. *Id.*  According to Dr. Metts, plaintiff is moderately limited in her ability to remember short, simple and detailed instructions, to carry out detailed instructions, and to make judgments on simple work-related decisions.

After the administrative law judge issued his decision, plaintiff, now represented by counsel, submitted additional documents to the Appeals Council, *A.R.* 425-463, including school records and three additional years of mental health medical treatment records from Six County. *A.R.* 433-450.  Also included were medical records pertaining to plaintiff's partial hemilaminectomy and diskectomy at L2-3 in September 1991 as well as preoperative and postoperative physical evaluations and diagnoses. *A.R.* 455-463.

In her *Statement of Errors*, plaintiff argues that the administrative law judge failed to fully develop the record, which involved an unrepresented and mentally impaired claimant. Plaintiff also complains that the administrative law judge improperly failed to obtain testimony from a medical expert.

When a disability claimant is not represented by counsel at the administrative hearing, the administrative law judge has a special duty to ensure that a full and fair administrative record is developed. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1051 (6th Cir. 1983). Although a court scrutinizes with care the administrative record when a claimant appears without counsel, the mere fact that a claimant was unrepresented is not alone grounds for reversal. *Holden v. Califano,* 641 F.2d 405, 408 (6th Cir. 1981). Rather, a court must examine each case on its own merits to determine whether the administrative law judge failed to fully develop the record and therefore denied the claimant a full and fair hearing. *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 856 (6th Cir. 1986).

Although this Court expresses no opinion on whether the administrative law judge failed to fully develop the record, the Court concludes that the matter should be remanded pursuant to Sentence 6 of 42 U.S.C. §405(g), for further consideration of the evidence presented for the first time to the Appeals Council.

The administrative law judge evaluated plaintiff's depression based on a record that omitted almost (3) three years of mental health treatment at Six County. Moreover, plaintiff's school records, submitted to the Appeals Council after the administrative law judge issued his decision, document plaintiff's reduced intellect.

Remand pursuant to Sentence 6 of 42 U.S.C. §405(g) for consideration of new evidence is appropriate if the proffered evidence is both new and material and if there is good cause for plaintiff's failure to incorporate the evidence into the record before the administrative law judge. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993). The Commissioner contends that plaintiff has failed to satisfy the standard for a Sentence 6 remand. *See Finkelstein v. Sullivan,* 496 U.S. 617, 626 (1990) [evidence must, *inter alia,* be new in order to warrant remand]; *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)[claimant must show good cause for failing to present the new and material evidence to the administrative law judge.]

This Court concludes that plaintiff has established good cause for her failure to incorporate her school records, prior surgery records and treating psychiatric records from July 2002 through the date of the administrative law judge's decision into the record before the administrative law judge. Given plaintiff's lack of counsel and apparent mental impairment, combined with her lack of education, there is no basis for concluding that plaintiff acted unreasonably in failing to either acquire or present this evidence to the administrative law judge. Furthermore, the Court also concludes that the proffered evidence is both new and material to plaintiff's application.

It is therefore **RECOMMENDED** that the action be **REMANDED** pursuant to Sentence 6 of 42 U.S.C. §405(g) for further review of new and material evidence relating to plaintiff's alleged impairments.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve

on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers,* 10 *Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

August 6, 2008                                       s/Norah McCann King
                                                     Norah McCann King
                                           United States Magistrate Judge